## WHAT ARE SUFFICIENT GROUNDS FOR A CHANGE OF VENUE.

Common Pleas Court of Clark County.

### STATE OF OHIO v. ARTHUR B. SMITH.

Decided, January, 1914.

*Criminal Law—Change of Venue Rests in the Sound Discretion of the Court—Will be Granted Only on Explicit and Convincing Evidence—Impanneling of Jury Affords Best Test as to Whether a Fair Trial Can be Had.*

1. Whether there should be a change of venue in a criminal case is to be determined in the sound discretion of the court, to which application is made for such change.
2. The defendant, who seeks a change of venue, must show by the facts and circumstances, and can not establish by the mere opinion of witnesses that a fair trial can not be had, and the defendant must prove that such trial can not be had by fair, impartial, explicit and convincing evidence.
3. The best test whether a fair trial can be secured, is the demonstration of that fact in the process of impanneling a jury, and if it thus appears, the defendant should then have the privilege of renewing his motion for a change of venue, where the former application has been overruled.

HAGAN, J.

This case has been submitted to the court on the motion of the defendant for a change of venue. The motion is as follows:

"Comes now the defendant, Arthur B. Smith, by his attorneys of record, James B. Malone and John M. Cole, and moves the court to change the place of trial of this cause, and to order this defendant and this cause to be tried in a county adjoining the county of Clark, state of Ohio, for the following reasons:

"1. A fair and impartial trial of this defendant and this cause can not be had in said county of Clark, state of Ohio.

"2. A fair and impartial jury for the trial of this defendant and this cause can not be impaneled in said Clark county, Ohio.

"3. By reason of prejudice pervading said Clark county, Ohio, a jury impaneled in said county can not dispassionately weigh the evidence and render a fair verdict in said cause.

"4. By reason of prejudice pervading said Clark county, Ohio, the witnesses which the defendant herein expects to use at the trial of said cause, will during said trial, if the same be

held in said county of Clark, be prevented and hindered in testifying freely and fearlessly in favor of this defendant.''

The motion is made under favor of Section. 11415, General Code, which is as follows:

''When it appears to the court that a fair and impartial trial can not be had in the county where the suit is pending, the court may change the place of trial to some adjoining county. If the application is made in the superior court, the change shall be made to another superior court, or to the common pleas court of an adjoining county.''

It is discretionary with the court wheth~~ ~ ~~~~~ ~ ~ ~ ~ kind is granted. *Bank* v. *Ward*, 11 Ohio Reports, page 128; *State* v. *Geiger*, 3 O. L. R., 626.

What weight of evidence should be required to sustain a motion for a change of venue in a criminal case?

It was held by Judge Wickham, of the Common Pleas Court of Coshocton County, Ohio, in the decision reported in 7 N.P. (N.S.), page 193, that:

''If it appears from the evidence offered in support of the motion to be improbable that the defendant can secure a fair and impartial trial, or an unbiased and unprejudiced jury, then we think it would be the duty of the court to order a change of venue.''

But it is stated by Judge Pfleger, of the Common Pleas Court of Hamilton County, and reported in 16 Ohio Dec., page 581, at page 583:

''A defendant who seeks a change of venue must show by facts and circumstances, that an impartial trial can not be had, and he can not rely upon the mere conclusions of opinions of witnesses that such trial can not be had.'' Citing *State* v. *Sandusky*, 48 W. Virginia Reports, 582, in support of the proposition.

Judge Pugh, of the Franklin county, Ohio, common pleas court, in the case of *State* v. *Elliott*, reported in the 25 Bulletin, at page 366, said in the syllabus:

''To authorize a change of venue in a criminal case on the motion of the defendant, he must prove by clear, explicit and con-

vincing evidence that a fair and impartial trial in the county where the indictment was found, can not be obtained.''

This ruling was affirmed by a majority of the Supreme Court of Ohio, affirmation being reported in 27 Bull., page 52.

The law of Ohio thus seems to require the measure of proof stated by Judge Pugh, rather than that stated by Judge Wickham, so that the defendant must prove clearly, explicitly and convincingly by the evidence, that a fair and impartial trial can not be obtained in the county where the indictment was found.

What is the evidence offered by the parties respectively, for and against the motion?

Affidavits in chief for defendant have been filed in support of the motion, to the number of fifty.

With the exception of one of these affidavits, which is of counsel for defendant, all are of the same tenor, each affidavit stating in substance that affiant by reason of his own observations, experience and conversations with many residents of this county with reference to this cause, knows that there exists among the people of said county a widespread and general prejudice against the defendant, Arthur B. Smith; that from extensive newspaper reports of past proceedings in said cause, together with many existent rumors and charges against the defendant published and unpublished, and in relation both to this cause and to other matters unconnected therewith, a very large number of citizens of said county have formed the strong and fixed belief that defendant is guilty as he stands charged in the indictment; and affiant believes that the general public sentiment and opinion throughout said county is strongly and firmly fixed to the effect that the defendant is guilty of murder in the first degree, and should receive the severest penalty of the law for such crime; that because of the existent general public sentiment defendant would be greatly hindered and impeded, if not completely prevented, from securing a fair and impartial jury, from securing fair and impartial consideration from the jury during his trial, and from procuring witnesses, residents of said county, to testify freely and fearlessly to facts which might constitute evidence, either direct or indirect, in defendant's favor, and affiant further says

that according to his best and honest belief, by reason of the facts set forth above, that the defendant can not now, and will not in the future be able to have a fair and impartial trial of this cause in Clark county, Ohio.

The affidavit of counsel for defendant states, in substance, that they have been engaged in the preparation of this cause for trial for many weeks last past; that they have interviewed a large number of citizens of this county regarding this cause, and so have acquired a knowledge of the existing public opinion, and the strength of the same, concerning the defendant's alleged guilt; that ever since the indictment of the defendant, the newspapers published and having a wide circulation in Clark county, have published what purport to be full and detailed accounts of the defendant's alleged connection with the crime charged in the indictment, and in connection therewith have given widespread publicity and currency to many and certain rumors wholly irrelevant as testimony in said cause, and as bearing on the guilt or innocence of the defendant, but extremely damaging to the defendant in the effect upon the general sentiment of the community.

They further say there are certain unpublished rumors which have gained wide circulation in this county, wholly irrelevant to this cause, and some of them of the most absurd and slanderous nature, but that affiants aver to be generally credited and believed by many citizens of the community, and which are extremely damaging to the defendant in their effect upon the general sentiment of the community.

They further say that the present state of public sentiment and opinion is so strongly directed against the defendant, that in certain portions of the community he is directly and openly charged with the commission of all manner of crimes and misdemeanors, which the state of Ohio does not and will not seek or attempt to charge against the defendant, but which have secured a certain degree of credence in the minds of many citizens of this county, which could not and can not be removed by any of the ordinary modes of proof; that although the state of Ohio makes no claim as to the defendant's guilt except as charged in the indictment, affiants have repeatedly heard the defendant

accused by reputable persons in this community, of the murder by poison of certain other persons than the one named in the indictment herein prior to the time charged in the indictment, and such accusations have attained such currency and belief that it would be impossible for this defendant to escape their harmful influence and effect upon the trial of the case at bar, should the trial be held in this county; that affiants have recently endeavored to procure many citizens of said county to make affidavit to their opinion that this defendant can not secure a fair trial of this cause in this county, and have interviewed a large number of prominent citizens thereof; that with three or four exceptions they have found no persons possessing the actual belief that this defendant can be fairly tried in this county; that they have, however, found large numbers of persons possessing such strong prejudice against the said defendant, that while admitting the improbability of a fair trial of said cause in this county, nevertheless refused to make affidavit thereto, expressing the reason that such affidavit would be to the advantage of the defendant, and might result in his acquittal.

Affiants further say that they have interviewed a large number of prominent business men and merchants in the city of Springfield, Ohio, who stated their opinion that the defendant could not be fairly tried in this county, but declined to make affidavit to such belief on the ground that their business would be injured in the community for even expressing such an opinion in the matter; that affiants believe that because of existent general public sentiment hereinbefore described, defendant will be prevented from securing a fair and impartial jury to try this cause; that if he should in any manner be able to secure a fair and impartial jury in this county still by said general sentiment he will be prevented from securing fair and impartial consideration from said jury during the progress of a public trial; that he would be prevented from securing witnesses, residents of said county, to inform his counsel of facts in their knowledge constituting evidence in his favor, and to testify fearlessly and freely to such facts in his favor at the trial of said cause.

Affiants further say that by reason of all of which affiants thus set forth in their affidavit, and according to their best and honest

belief, and after many weeks of attempted preparation of said cause for trial, that the defendant can not now, and will not in the future be able to have a fair and impartial trial of this cause in this county.

Counsel for the state thereupon filed affidavits to the number of 120, all of the same tenor—each stating in substance that affiant has talked with a large number of people living in this county, and has read about this case, and about the death of Florence Cavileer Smith and the alleged cause of her death; that affiant has knowledge of what the general feeling, opinion and sentiment of the people of Clark county is with regard to the defendant Arthur B. Smith, and the death of said Florence Cavileer Smith; that there is no prejudice or ill-feeling among the people living in this county towards the defendant that would in any way whatever prevent him from securing and having a fair and impartial trial in this county, on the charge of murder in the first degree, now pending against him, and that affiant believes that the said Arthur B. Smith can secure a fair and impartial trial in this county on said charge.

Upon the filing of these affidavits for the state, the defendant was permitted, with the consent of counsel for the state, to file additional affidavits to the number of 102, all of the same tenor, each setting forth that the affiant has a wide acquaintance and has talked with a large number of people in the county regarding this cause, and has heard about the case and read a large number of newspaper accounts concerning the same and knows the general feeling, opinion and sentiment of the people of this county in regard to the defendant and his alleged connection with the cause.

Affiant further says he denies that there is no prejudice or ill-feeling among the people living in Clark county, Ohio, against the defendant, but avers that there is such strong prejudice and ill-feeling against the defendant, that it will prevent him from having a fair and impartial trial in this county, and therefore says upon his honest and best belief, that the said defendant can not secure a fair and impartial trial of this cause in this county.

Briefly and concisely stated, the affidavits for the defendant, other than those of his counsel, are that because of newspaper

reports and unpublished rumors and charges against the defendant, a large number of citizens have the strong and fixed belief that the defendant is guilty, and because of this belief he can not secure a fair and impartial jury or a fair and impartial consideration from the jury, or witnesses to testify fearlessly and freely in his behalf, and therefore that he can not obtain a fair and impartial trial in this county.

The extent of the newspaper reports and alleged unpublished rumors and charges not being specified as to their character, or set forth in the affidavits, the court has no basis on which to form an opinion as to their probable effect on public sentiment.

The affidavit of counsel for defendant repeats the like statement as to published and unpublished reports and rumors in regard to the defendant, without setting forth the publications or the nature of the same, or the alleged rumors or their nature, hence this affidavit falls within the same class as the other affidavits for the defendant.

Counsel in their affidavit, however, further say that in certain portions of the community the defendant is directly and openly charged with the commission of all manner of crimes and misdemeanors, among which specifically, is the murder by poison administered by the defendant, to other persons than the one named in the indictment prior to the time charged in the indictment.

As to the alleged charging of the defendant with other crimes than that named in the indictment, the court takes judicial notice that this is probably true, but that such charges have never been published in the newspapers, and their circulation has been limited to a comparatively small portion of the people in Clark county.

It is to be noted that in none of the affidavits for defendant. is it claimed that any person in the county has stated that the defendant should not have a fair trial, or that if he was sitting as a juror in the case he would not be disposed to give him a fair trial.

It may be true, as stated in these affidavits, that there are some persons who refuse to make affidavit in behalf of the defendant. on this motion, from the fear that an affidavit of that character might be to his advantage, and might result in his

acquittal, and it may also be true that some business men and merchants of the city of Springfield, while believing that the defendant could not be fairly tried, declined to make affidavit to the belief, from fear that their own business would be injured in the community for even expressing such an opinion in the matter. There are always some cautious souls of this class in every community in a great crisis, but the affidavits for the state are entitled to at least equal credence with those for the defendant, and they are each and all equally positive with those for the defendant, but to the effect that affiant has knowledge of the general feeling and sentiment of the people of this county, and that there is no prejudice or ill-feeling of the people of this county that would prevent the defendant from having a fair and impartial trial of this cause, and they believe he can secure a fair and impartial trial.

The court is not impressed with the claim that there is so much prejudice in this community against the defendant, that the testimony of witnesses who know important facts can not be obtained by defendant. If this were true it would not be remedied by shifting the venue to another county, because the same reluctance to disclose the important testimony would exist on the part of witnesses, nor is the court impressed with the idea that there would be such an atmosphere around the jury in the trial of the case as to adversely affect the defendant by reason of its influence upon the jury.

It is but fair to the defendant, however, to state that the court takes notice of the fact that in this as in every case where murder is charged against the defendant, and there is a free publication in the newspapers of the claims made on behalf of the state in regard to the alleged offense, many people in the community necessarily form opinions of more or less strength to the effect that the defendant is guilty of the charge made.

Counsel for both parties, on the oral argument, asked the court to look beyond the affidavits filed in this case in considering this motion, and to take judicial notice of the sentiment in this county, for the purpose of trying to determine whether the defendant could have a fair trial, and counsel for defendant in their brief repeat the request and cite authority to hold that it

is within the province of the court to take judicial notice of sentiment in such cases.

The court also takes judicial notice of the fact that Clark county is in a normal condition; there is no race war waging in its borders; there are no family feuds, such as embrace whole counties in the mountain district of Kentucky; there is no political division among the people engendering the rancor which sometimes is produced from such causes; there is no war between labor and capital to engender hostile feeling of one class against another; the affidavits do not show, and the court takes judicial notice of the fact that there does not exist any such or kindred conditions by reason of which any large number of people in this county would have a feeling of hostility to the defendant as belonging to the opposite faction or class from themselves, so that they would be disposed to convict him on that account if sitting as jurors in this case, and regardless of the facts and evidence and law of the case.

In other words, there is no hostility or antipathy shown by the evidence as existing in this community towards the defendant, growing out of any cause or causes extraneous to the unhappy occurrences which have led to the indictment against him.

The court takes judicial notice of the sense of American fairness which governs the people of this county, and does not believe that the great mass of its people desire that the defendant shall not have a fair and impartial trial, but in fact, in the hearing of the court, many people have expressed the hope that the evidence would be such in this case as to exonerate the defendant from the charge which is made against him.

With the sifting process of the law and the aid of the able and ingenious counsel of defendant, in this case, the court firmly believes that a jury of the men of Clark county could be made up, the members of which will wholly divest themselves of any opinion previously formed and render a fair and impartial verdict on the facts as they find them to exist, and with the law applied thereto as given by the court.

It may be worthy of note that the able jurist already referred to, in the case of *State* v. *Elliott* made this remark:

"I am sustained by high authority in saying that a change of venue in many criminal cases has been a positive disadvantage

to the defendant.   Not infrequently an impression is created unfavorable to the defendant, from the fact that he felt it necessary to ask for a change, and this impression accompanies the case into the county to which the change is made.   The remedy is in many cases the thorough sifting of the jury.''

The court, therefore, whether adopting the rule of improbability as laid down by Judge Wickham, or the rule stated by Judge Pugh, requiring clear, explicit and convincing evidence to sustain the motion, is constrained to arrive at the conclusion that the motion should be overruled.

The court, however, does not desire to do an injustice to the defendant, and may be in error in the conclusion which he has reached.   The court is therefore disposed to follow the precedent of the case of *State* v. *Elliott*, in which the principle is stated, with an array of authorities in support of it, that the best test whether a fair trial can be secured arises in the process of impanneling the jury, and that even where affidavits for the defendant make a showing that would justify a change of venue, it is not an abuse of discretion for the court to await such test.   The court should ever preserve its attitude of willingness to give the defendant every reasonable opportunity to obtain a fair trial.

The motion of the defendant is, therefore, overruled, but without prejudice to the filing by defendant of another motion for a change of venue while the impanneling of the jury is in process, such motion to be on the sole ground that a fair and impartial jury for the trial of this defendant and this cause can not be impanneled in this county and such motion to be filed only by the permission of the court.

If in the impanneling of the jury the court becomes satisfied that a fair and impartial jury can not be secured, the court will permit such a motion for a change of venue to be filed.